# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| INTRALOT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11-cv-08046 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN W. MCCAFFREY, *et al.* | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Intralot Inc., ("Intralot") filed a three-count first amended complaint [16] against

Defendants John McCaffrey and Sheila Washburn[1] alleging equal protection violations under 42

U.S.C. § 1983 (Count I), defamation (Count II), and commercial disparagement (Count III).

Plaintiff's claim arises out of its application to serve as the private manager of the state lottery.

Defendants' filed a motion to dismiss [18] Plaintiff's complaint pursuant to Fed. R. Civ. P.

12(b)(6). For the following reasons, Defendants' motion [18] is granted.

## I.      Background[2]

In July 2009, the Illinois General Assembly enacted legislation that directed the Illinois

Department of Revenue ("IDOR") to hire a private manager to run the Illinois Lottery. In

particular, the statute required the IDOR to "select a private manager through a competitive

request for qualifications" and directed that in doing so the IDOR "shall take into account"

---

[1] Sheila Washburn, who is the current Freedom of Information Act Officer of the Illinois Department of Revenue, is named as a Defendant only as to Counts II and III.

[2] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

several criteria: "(1) the offeror's ability to market the Lottery . . ., (2) the offeror's ability to address the State's concern with the social effects of gambling on those who can least afford to do so, (3) the offeror's ability to provide the most successful management of the Lottery . . ., and (4) the offeror's poor or inadequate past performance in servicing, equipping, operating or managing a lottery on behalf of Illinois, another State of foreign government and attracting persons who are not currently regular players of a lottery." 20 ILCS 1605/9/1(e). Another statute, 30 ILCS 500/1-10(c), exempted the private manager bidding process from most provisions of the Illinois Procurement Code.

To implement the statutory directive, in 2010 the IDOR initiated a process through which it hoped to hire the private manager that would run the Illinois Lottery. Pursuant to the published procedures, Intralot issued a formal expression of interest and a subsequent official response to the state's Request for Proposal ("RFP"). The steps required of the would-be lottery manager under the RFP were two-fold: Step One required each interested party to submit information on a number of topics about their business and their experience in lottery management; Step Two was offered only to finalists and included a possible probity investigation. For its part, the IDOR was to use Step One of the RFP process "to identify Offerors that possessed the qualifications, experience and resources necessary to assume the responsibilities of the Private Manager" and to determine at Step Two "which finalist offered the best overall value to the State of Illinois."

Three companies competed in Step One of the RFP: Intralot, Camelot Illinois LLC ("Camelot") and Northstar Lottery Group ("Northstar"). Northstar is a consortium of three companies, all of whom had existing lottery contracts with the State of Illinois. Both Northstar and Camelot were selected to advance to Step Two of the procedure, and on September 15, 2010, Northstar was selected to run the Illinois lottery. Intralot was disqualified at Step One as a result

of an unacceptably low score. On September 21, 2010, Intralot filed a formal protest based on its elimination from the selection process at Step One, asserting that the low score that it received was inexplicable and contending that the evaluators received inaccurate or incomplete information or were inadequately trained in the process of reviewing proposals.

On October 12, 2010, McCaffrey, who was then the IDOR's General Counsel, met with Intralot's outside counsel, John E. Stevens ("Stevens"). At that meeting, McCaffrey advised that he had ordered a background check of Intralot during Step One, that the background check contained damaging information which resulted in the low score, and that, if the protest continued, the background check would be reduced to writing and made available to the public under the Freedom of Information Act. Intralot did not withdraw its protest, and on November 12, 2010, McCaffrey filed a written response (the "Response") to the protest with the IDOR. The Response contained a number of details about Intralot and its managers; these details were obtained from a report prepared by Kroll Associates (the "Kroll Report"), which was provided to the State. The facts in the Kroll Report and the subsequent Response are in dispute. A written response was not required by the Illinois Procurement Code, the law governing many aspects of the Illinois Lottery. Nor did the RFP provide for a response to a formal protest; a response was not barred from the process, but to date had been unprecedented.

Intralot's class-of-one complaint is comprised of two parts. First, Intralot claims that McCaffrey unlawfully inquired into Intralot's background and initiated a probity examination during Step One of the RFP instead of waiting to undertake those tasks during Step Two, as discussed in the RFP language. According to Intralot, this deviation from standard procedures constituted an unfair application of the process that disadvantaged its firm. Second, Intralot claims that McCaffrey's decisions to reduce the probity findings to writing, incorporate the Kroll

3

Report findings in the Response, and file the Response for public access under the Freedom of Information Act were inappropriate and done for the purposes of harming Intralot. Intralot seeks damages for the perceived abuse of the procedural steps during the RFP process, and further seeks to have the Response removed from the record. Intralot also would like an injunction prohibiting release of the Response to those who may request it under Illinois's Freedom of Information Act.

## II.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.      Analysis**

**A.       Class-of-One Equal Protection Claim**

Count I of Plaintiff's complaint alleges a class-of-one equal protection violation under the Fourteenth Amendment.  A class-of-one claim differs from the typical equal protection claim in that the plaintiff is not claiming to have been discriminated against because of its membership in an identifiable group; rather, a plaintiff "states a class-of-one equal protection claim by alleging that he 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  To establish liability for a class-of-one violation, Plaintiff must allege that: (1) it was part of a class of individuals or groups that were similarly situated; (2) it was intentionally treated differently from its peers in a context where there were clear and defined standards governing the state's actions; (3) it suffered harm as a result of the state's actions; and (4) the difference in treatment was not rationally related to a legitimate state interest. *Village of Willowbrook*, 528 U.S. at 564 (2000); *Engquist v. Oregon Dept. of Agr.,* 553 U.S. 591, 603 (2008).  Essentially, a class-of-one complaint alleges that the plaintiff was treated arbitrarily worse than others who were identically situated. *Lauth v. McCollum,* 424 F.3d 631, 633 (7th Cir. 2005).

Importantly, class-of-one equal protection claims are not cognizable with regard to all state decisions.  In *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 603 (2008), the Supreme Court held that class-of-one claims are prohibited when the state action occurs in the context of discretionary decision making that requires individualized and subjective evaluations. The Court specifically explained that:

> There are some forms of state action . . . which by their nature
> involved discretionary decisionmaking based on a vast array of
> subjective, individualized assessments. In such case, the rule that
> people should be 'treated alike, under like circumstances and
> conditions' is not violated when one person is treated differently
> from others, because treating like individuals differently is an
> accepted consequence of the discretion granted. In such situations,
> allowing a challenge based upon the arbitrary singling out of a
> particular person would undermine the very discretion that such
> state officials are entrusted to exercise. *Id*.

Defendants argue that Plaintiff's claim in this case is not cognizable under *Engquist*. Accordingly, the Court begins its analysis with whether *Engquist* bars Plaintiff's class-of-one claim.

In *Engquist*, the Supreme Court made clear that employment-related state actions are immune from class-of-one suits because they are necessarily discretionary and require subjective, individualized assessments. 553 U.S. at 603; see also *Del Marcelle v. Brown County Corp.,* 680 F.3d 887 (7th Cir. 2012). There are certain areas – for example, the employment context – in which a state must be permitted to use discretion in governing its internal affairs, even if the exercise of that discretion results in an apparently arbitrary difference in treatment of two individuals. *Id.* As the Supreme Court explained, in order to efficiently manage its workforce, a state must be free to make hiring decisions without fear that it must defend each decision in court. *Id.* In this case, however, Plaintiff is not a state employee; it is a contractor. Thus, the question for this Court whether *Engquist* applies to the case at hand.

Although the Supreme Court and the Seventh Circuit have not directly addressed the issue of whether class-of-one claims by contractors will be treated the same as those by state employees, the relevant case law suggests that they should be. To begin with, in *Board of County Commissioners v. Umbehr*, the Supreme Court considered whether independent contractors are entitled to the same free speech protections under § 1983 that state employees

might seek.  The Court concluded that existing state-employee precedent applied to the question of contractors because of the "obvious" similarities between government employees and government contractors.  518 U.S. 668, 671-74 (1996).  Although *Umbehr* obviously pre-dates *Engquist*, it suggests that an expansion of *Engquist*'s holding to the government contract context would be a logical step.

The Seventh Circuit's post-*Engquist* decisions point in the same direction.  The court of appeals twice has applied *Engquist* beyond public employment in refusing to allow class-of-one claims to proceed.  See *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009) (holding that municipality's "decision to extend its water mains to some communities and not others was based on subjective and individualized assessments" that are "the exact type of individualized and discretionary decision-making to which the *Engquist* Court was referring"); *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) (holding that "a class-of-one equal protection challenge, at least where premised solely on arbitrariness/irrationality, is just as much a 'poor fit' in the prosecutorial discretion context as in the public employment context").  In a third case, *Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009), the court held that the plaintiff had stated a claim under a class-of-one theory against police officers who allegedly made repeated arrests of the plaintiff solely because of malice.  But even in that context, the court noted that "*Engquist* does show that some discretionary police decision-making is off-limits from class-of-one claims" and stressed that the critical lesson in evaluating whether a specific claim remains permissible in light of *Engquist* "is that context matters."  *Id*.[3]

_____

[3] In distinguishing the claim in *Hanes* from *Engquist*, the Seventh Circuit noted that (1) the discretion afforded to police officers "is much narrower than the discretion given public employers" in that officers must ground their decisions to stop a suspect on "articulable facts" and cannot justify their decisions with "subjective intentions"; (2) "police officers, in contrast to public employers, exercise sovereign power"; and (3) the reluctance of courts to scrutinize routine employment decisions does not apply to

Moreover, the one circuit to have squarely considered the issue had "little trouble applying the reasoning in *Engquist*, directed at the government-employee relationship" to a case "involving a government-contractor relationship." *Douglas Asphalt Co. v. Qore, Inc.,* 541 F.3d. 1269 (11th Cir. 2008). Relying on the logic of *Umbehr*, the Eleventh Circuit held that a class-of-one equal protection claim was not cognizable where a construction company alleged that it was wrongfully targeted during the application process for a new construction bid. *Id.* at 1273. In so holding, the court reasoned that "[j]ust as in the employee context, and in the absence of a restricting contract or statute, decisions involving government contractors require broad discretion that may rest on a wide array of factors that are difficult to articulate and quantify." *Id.* at 1274; see also *SECSYS, LLC v. Vigil*, 666 F.3d 678, 690 (10th Cir. 2012) (questioning whether a "class of one doctrine should apply at all in the government contracting context" in light of *Engquist* and observing that "it is arguably just a small step" from *Engquist*'s holding that the doctrine does not apply when the government acts as employer "to the conclusion that the doctrine shouldn't apply when the government interacts with independent contractors – in both circumstances, the government acts in a more proprietorial and less regulatory capacity").

Defendants argue that this Court should apply the reasoning in *Douglas Asphalt* and dismiss Plaintiff's claim because—just as in *Douglas Asphalt*—the relevant statutes give Defendants broad discretion to consider varied and individualized factors in evaluating the bidders. Defendants specifically point to 20 ILCS 1605/9.1(e), pursuant to which the Department was required to "select a private manager through a competitive request for qualifications," that "shall take into account . . . (1) the offeror's ability to market the Lottery . . ., (2) the offeror's ability to address the State's concern with the social effects of gambling on

---

constitutional challenges to the actions of police officers, which are common in the federal courts. See *Hanes*, 578 F.3d at 495.

those who can least afford to do so, (3) the offeror's ability to provide the most successful management of the Lottery, and (4) the offeror's poor or inadequate past performance in servicing, equipping, operating or managing a lottery on behalf of Illinois, another State or foreign government and attracting persons who are not currently regular players of a lottery." Defendants also note that the Private Manager bidding process was specifically exempted from most provisions of the Illinois Procurement Code. See 30 ILCS 500/1-10(c). The Court agrees that *Douglas Asphalt* is both instructive and persuasive and finds it likely that both the Supreme Court and the Seventh Circuit would come out the same way if either were presented with the question of whether to apply *Engquist*'s reasoning to the state-contractor relationship. As in *Douglas Asphalt*, the hiring scheme created by the State for the Private Manager position contemplates exactly the kind of "subjective and discretionary" governmental decision-making, in which the government acts "in a more proprietorial and less regulatory capacity" (*SECSYS*, 666 F.3d at 690), that *Engquist* held cannot be attacked through a class-of-one equal protection claim.

Plaintiff attempts to differentiate its case from *Douglas Asphalt* by arguing that it is not challenging the process (or its outcome) generally. Instead, Plaintiff focuses on a subset of actions within the hiring process during which state officials allegedly deviated from their typical procedures and treated Plaintiff differently than its peers. Specifically, Plaintiff argues that the examination into Plaintiff's background (or probity) was forbidden at Step 1 and that McCaffrey therefore lacked discretion to undertake that examination at Step 1. In Plaintiff's view, the RFP establishes a "clear prohibition . . . against conducting vendor probity examinations prior to Step 2 of the evaluation process." Pl. Br. at 7. Plaintiff therefore rests its equal protection claim "on McCaffrey's discriminatory application of the unequivocal restrictions the RFP placed upon

when probity examinations could be conducted." *Id*. at 11. In other words, by establishing "a specific and limited timeframe during which probity examinations could be conducted" (*id*. at 8), the RFP constituted a "restricting contract" that limited the discretion of the IDOR in its dealings with potential private managers. See *Douglas Asphalt*, 541 F.3d at 1274 ("*in the absence of a restricting contract or statute*, decisions involving government contractors require broad discretion") (emphasis added).

In evaluating the linchpin of Plaintiff's constitutional claim, the Court returns to the Seventh Circuit's observation that in assessing the reach of *Engquist*'s limitations on viable class-of-one scenarios, "context matters." *Hanes*, 578 F.3d at 495. Here, context sinks Plaintiff's attempt to fashion an equal protection claim out of McCaffrey's allegedly premature examination of Plaintiff's background or probity. In short, neither the pertinent statute nor the IDOR's own RFP process can be read to have restricted McCaffrey's discretion to examine matters relating to Plaintiff's probity in discharging the IDOR's statutory duty to "take into account . . . [Plaintiff's] past performance in servicing, equipping, operating or managing a lottery" and its role in evaluating applicants to identify offerors "that possessed the qualifications, experience and resources necessary to assume the responsibilities of the Private Manager," as the IDOR was required to do at Step 1. In fact, inquiries into background and probity are fully consistent with both the statutory and regulatory obligations of the IDOR at both steps of the RFP process. Moreover, as Defendants correctly note, while the references to background and probity investigations in the RFP provide notice to potential offerors of the potential scope of the IDOR's inquiry, they do not impose any express limitations on the Department. The fact that finalists may be *required* to undergo a background or probity investigation at Step 2 in no way *prohibits* the IDOR from initiating such an investigation (or

even a less formal inquiry into those subjects) at Step 1.  If anything, the discussion in the RFP

undermines Plaintiff's position, because it emphasizes the IDOR's *discretion* in conducting such

investigations.  In short, to the extent that the RFP could constitute a "contract" under *Douglas*

*Asphalt*, its terms do not contain the kind of "restricting" language that limited the discretion of

the IDOR in the manner that Plaintiff posits in trying to frame its class-of-one equal protection

claim.

Finally, even if Plaintiff's theory had statutory or contractual support, it does not appear

that *Engquist* would tolerate the segmented parsing of a discretionary decision such as the

selection of a lottery manager in the manner suggested by Plaintiff.  In *Engquist*, the Court

focused on the discretionary "context" of employment decisionmaking, not on each individual

decision leading up to the final personnel action.  As the Court noted, "an allegation of arbitrary

differential treatment could be made in nearly every instance of an assertedly wrongful

employment action—not only hiring and firing decisions, but any personnel action, such as

promotion, salary or work assignments."  553 U.S. at 608.  The Court was concerned that "any

personnel action in which a wronged employee can conjure up a claim of differential treatment

will suddenly become the basis for a federal constitutional claim."  *Id*.   Thus, Plaintiff's attempt

to circumvent the prohibition on class-of-one claims challenging discretionary state actions by

attacking a discrete component of the State's decision-making process in which someone

involved in that process allegedly deviated from the standard procedure fails because the entire

hiring process permits – and even requires – the exercise of discretion.

Ultimately, the Court is persuaded by the *Douglas Asphalt* court that *Engquist* applies to

state-contractor relationships for the same reason that it applies to state-employee relationships.

*Douglas Asphalt,* 541 F.3d. at 1274 ("Just as in the employee context, and in the absence of a

restricting contract or statute, decisions involving government contractors require broad discretion that may rest on a wide array of factors that are difficult to articulate and quantify."). And under *Engquist,* class-of-one actions are prohibited when the governmental decision is discretionary in nature.[4] Because the State's choice of a lottery manager unquestionably was discretionary in nature, Plaintiff's class-of-one claim must be dismissed.

### B.      Counts II and III: State Law Claims

With the granting of Defendants' motion to dismiss the sole federal claim over which it has original jurisdiction, the Court addresses whether to retain jurisdiction over the remaining state law claims, Counts II and III.   See 28 U.S.C. § 1367(c)(3).   The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993).  Finding no justification for departing from that "usual practice" in this case,[5] Plaintiff's state law claims are dismissed without prejudice.  See *In re Repository*

---

[4] Having concluded that *Engquist* forecloses a class-of-one claim in the context of a state-contractor relationship, the Court need not address the other factors required to prove such a claim. Likewise, the Court need not consider whether a state official's failure to follow its own rules or regulations – for example, the terms of the RFP – can constitute a constitutional violation in the first place.  See *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("As we tirelessly but unavailingly remind counsel in this court, a violation of state law (for purposes of this case the student judicial code may be treated as a state law) is not a denial of due process, even if the state law confers a procedural right").

[5] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal

*Technologies, Inc.*, 601 F.3d 710, 724-25 (7th Cir. 2010); *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts.").

## IV.    Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss [18].

Dated:  September 21, 2012                    _____
                                             Robert M. Dow, Jr.
                                             United States District Judge

---

without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint. *Wright*, 29 F.3d at 1251.